**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DWAYNE M. BULLS, | ) | CASE NO. 5:16-cv-02095 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| MARY POTTER, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Dwayne M. Bulls, (hereinafter "Petitioner" or "Bull"), challenges the constitutionality of his conviction in the case of *State v. Bulls*, Summit County Court of Common Pleas Case No. 2013-CR-55. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 19, 2016. (R. 1). Warden Mary Potter ("Respondent") filed her Answer/Return of Writ (R. 7), and Petitioner filed a Traverse. (R. 16). Respondent did not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §
2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court
factual findings are presumed correct unless rebutted by clear and convincing evidence.") The
Ninth District Court of Appeals (hereinafter "state appellate court") summarized the facts
underlying Petitioner's conviction as follows:

> {¶ 2} In October 2012, T.H. told her mother that her step-father, Mr. Bulls, had
> raped her the previous year. T.H. was eleven at the time of the alleged rape and,
> shortly after reporting the rape to her mother, was diagnosed with chlamydia.

> {¶ 3} A grand jury indicted Mr. Bulls on two counts of rape, in violation of R.C.
> 2907.02(A)(1)(b). The first count alleged rape strictly by virtue of the victim
> being less than 13 years of age while the second count included the additional
> element that Mr. Bulls had used force or the threat of force against the minor
> victim. The matter proceeded to a jury trial, and the jury found that Mr. Bulls had
> purposely compelled the minor victim to submit by force or threat of force.
> Consequently, the jury found Mr. Bulls guilty of the second count of rape. The
> State dismissed the first count, and the matter proceeded to sentencing. The trial
> court sentenced Mr. Bulls to life in prison with the possibility of parole after 25
> years and classified him as a Tier III sex offender.

> * * *

> {¶ 8} T.H. testified that she was born in November 1999. In October 2011, she
> was living at home with her sister, her two brothers, her mother, and Mr. Bulls,
> her step-father. T.H. testified that, one October evening, Mr. Bulls told her to
> come out to the garage behind her house. At the time, T.H.'s mother was at work
> and her [sic] several of her siblings were in the house. T.H. testified that Mr. Bulls
> often worked on cars out in the garage, so it was not unusual for him to ask her or
> one of her siblings for help. Accordingly, she walked out to the garage and
> entered it through the man door, ahead of Mr. Bulls.

> {¶ 9} T.H. stated that Mr. Bulls pulled the man door closed behind them. The two
> garage doors were already closed and, after the two entered, Mr. Bulls turned off
> the lights. T.H. testified that Mr. Bulls told her to get down on the couch that was
> located in the garage, but she refused to do so. At that point, Mr. Bulls pushed her
> onto the couch and ordered her to get undressed. When she again said no, Mr.
> Bulls held her face down with one hand while he used the other to pull down her
> shorts. T.H. described how Mr. Bulls situated himself between her legs and pulled
> down his pants. She testified that Mr. Bulls then "put it in [her]." When asked
> what "it" was, T.H. said that "it" was Mr. Bulls' "private part." When asked what

part of her body she meant when she said Mr. Bulls put his private part "in [her]," T.H. stated: "Like my butt." In response to a question about what she "do[es] with [her] butt," T.H. responded: "Do out of it."

{¶ 10} T.H. testified that she was crying and trying to move around while Mr. Bulls was moving on top of her. Eventually, Mr. Bulls stopped and let her up. T.H. then went in the house and cried by herself in her room until she eventually went to bed. She did not tell her mother about the incident until October 2012. After T.H. told her mother that Mr. Bulls had raped her, her mother took her to the CARE Center at Akron Children's Hospital.

{¶ 11} Colleen Shrout, a social worker in the CARE Center, interviewed T.H. as part of the evaluation T.H. received at Akron Children's. The State played the recording of Ms. Shrout's interview with T.H. for the jury. During the interview, T.H. denied being sexually active, but told Ms. Shrout that Mr. Bulls had raped her and described the incident, consistent with her testimony at trial. When Ms. Shrout asked T.H. whether anything went "inside [her] butt" during the sexual assault, T.H. said yes. Ms. Shrout then asked T.H. what went "inside [her] butt," and T.H. said she felt Mr. Bulls' "private" in her butt. She also said that she experienced pain in her butt and her stomach the day after Mr. Bulls assaulted her.

{¶ 12} Nurse Practitioner Donna Abbott testified that she gave T.H. a physical examination when her mother brought her to the CARE Center. Nurse Abbott did not document any significant findings as the result of the exam, but noted that it is not uncommon for sexual assault victims to either not display any signs of injury or to heal quickly. As part of her examination, she tested T.H. for any sexually transmitted diseases. Nurse Abbott testified that T.H. tested positive for chlamydia and that chlamydia can only be contracted through sexual activity. As such, Nurse Abbott opined that, in her professional opinion, T.H. was the victim of sexual abuse.

{¶ 13} Dr. Marguerite Erme, the Medial Director of Akron Public Health, testified as an expert in the area of sexually transmitted diseases. Dr. Erme testified that chlamydia is a germ similar to bacteria and can only be contracted through sexual activity. She defined sexual activity as "any activity where sexual organs from one person may come in contact with sexual organs of another—or the mouth or the anus of another person." Dr. Erme stated that untreated chlamydia can be present in a person for up to two years and that the person may not display any physical symptoms. Moreover, people who receive treatment for chlamydia can become reinfected if they engage in sexual activity with an infected person after they complete their course of antibiotics. She testified that, when patients are told they have chlamydia and receive treatment, the general practice of treating physicians is to explain to the person that they contracted the disease through unprotected sexual activity. Dr. Erme reviewed Mr. Bulls' treatment records and confirmed that he was treated for chlamydia in February

2011.

*State v. Bulls*, 2015-Ohio-276, ¶¶ 8-13, 2015 WL 340847 (Ohio Ct. App. Jan. 28, 2015), *appeal not allowed*, 143 Ohio St.3d 1442, 2015-Ohio-3427, 36 N.E.3d 189, ¶¶ 8-13 (Ohio 2015).

## II. Procedural History

### A. Conviction

On December 28, 2012, a Summit County Grand Jury charged Petitioner with one count of rape of a minor less than thirteen (13) years old in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(b). (R. 7-1, PageID# 99, Exh. 1). Petitioner pleaded not guilty. (R. 7-1, PageID# 100, Exh. 2). Thereafter, in a supplemental indictment, Petitioner was charged with rape of a minor less than thirteen (13) years old by use of force or threat or force in violation of R.C. §2907.02(A)(1)(b). (R. 7-1, PageID# 101, Exh. 3). Again, Petitioner pleaded not guilty. (R. 7-1, PageID# 102, Exh. 4).

On June 21, 2013, a jury found Petitioner guilty of rape as charged in the second supplemental indictment. (R. 7-1, PageID# 103, Exh. 5). Upon the State's motion, the trial court dismissed the charge of rape as contained in the first count of the original indictment. (R. 7-1, PageID# 104, Exh. 6).

On July 23, 2013, the court imposed a mandatory sentence of 25 years to life in prison. (R. 7-1, PageID# 104-106, Exh. 6). (Exhibit 6, Case No. CR-12-12-3518). Petitioner was informed that he was subject to a mandatory period of 5 years post-release control and designated a Tier III sex offender. *Id.*

### B. Direct Appeal

On July 31, 2013, Petitioner, through counsel, filed a Notice of Appeal with the state appellate court. (R. 7-1, PageID# 107, Exh. 7). Petitioner raised the following assignments of

error:

1. Appellant's conviction for rape is unconstitutional as they [sic] are against the manifest weight of the evidence and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

2. The trial Court erred when it denied Appellant's motion for acquittal.

3. The trial court violated Appellant's rights under the Sixth and Fourteenth Amendments of the United States Constitution, Article One, Section 10 of the Ohio Constitution and Section 2907.02(B) of the Ohio Revised Code when it sentenced Appellant to a life sentence absent requisite findings by the jury as to the Appellant's age at the time of the offense.

(R. 7-1, PageID# 108-127, Exh. 8).

On January 28, 2015, the state appellate court overruled Petitioner's assignments of error

and affirmed the judgment of the trial court. (R. 7-1, PageID# 153-164, Exh. 10).

On March 16, 2015, Petitioner, through counsel, filed a notice of appeal with the Ohio

Supreme Court. (R. 7-1, PageID# 165-166, Exh. 11). In his Memorandum in Support of

Jurisdiction, Petitioner set forth the following four propositions of law:

1. Appellant's conviction for rape is unconstitutional as they are [sic] against the manifest weight of the evidence and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One Sections Ten and Sixteen of the Ohio Constitution.

2. The trial court erred when it denied Appellant's motion for acquittal.

3. The trial court violated Appellant's rights under the Sixth and Fourteenth Amendments of the of the United States Constitution, Article One, Section Ten of the Ohio Constitution and Section 2907.02(B) of the Ohio Revised Code when it sentenced Appellant to a life sentence absent requisite findings by the jury as to the Appellant's age at the time of the offense.

4. This Court should reverse Petitioner's conviction and sentence and remand the case to the Ninth District for further consideration pursuant to *State v. Bevly*, 2015-Ohio-475 (2015).

5

(R. 7-1, PageID# 167-183, Exh. 12). The state filed a waiver of memorandum in response. (R. 7-1, PageID# 184, Exh. 13).

On August 26, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. Rule 7.08(B)(4). (R. 7-1, PageID# 185, Exh. 14).

**C.    Postconviction Relief**

While his appeal before the state appellate court was still pending, Petitioner, through counsel, on August 4, 2014, filed a petition for postconviction relief raising the following three claims for relief: (1) Petitioner was deprived of the effective assistance of trial counsel for failing to obtain information demonstrating that the victim had a propensity to lie; (2) Petitioner was deprived of the effective assistance of trial counsel stemming from his alleged failure to reasonably investigate whether the victim's sexually transmitted disease may have stemmed from other prior sexual activity; and (3) the State may have suppressed evidence or failed to disclose evidence to defense counsel. (R. 7-1, PageID# 186-195, Exh. 15). The State filed a motion to dismiss Petitioner's post-conviction petition arguing that Petitioner had not presented any evidence *de hors* the record in support of his arguments. (R. 7-1, PageID# 198-206, Exh. 16).

On January 28, 2015, the court of common pleas denied the petition to vacate without a hearing as Petitioner did not submit any new evidence in support of his argument that he received ineffective assistance of counsel and the allegations of a *Brady* violation were merely speculative. (R. 7-1, PageID# 211-216, Exh. 18).

On March 9, 2015, Petitioner, through counsel, filed a notice of appeal with the state appellate court. (R. 7-1, PageID# 217). He raised one assignment of error: "[t]he trial court erred when it granted the State's motion to dismiss Appellant's post conviction petition, in violation of

Section 2953.21 *et. seq* of the Ohio Revised Code; Article One, Section Sixteen of the Ohio Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution." (R. 7-1, PageID# 219-237, Exh. 20).

On December 9, 2015, the state appellate court found the trial court had not abused its discretion in denying the petition without a hearing because: (1) Bulls' ineffective assistance claim "fails to state specific information regarding the claimed ineffectiveness of Bulls' trial counsel" as counsel's affidavit was conclusory; and, (2) the affidavit alleging a *Brady* violation failed to list "exculpatory or otherwise favorable evidence that was withheld from him during the trial court proceedings." (R. 7-1, PageID# 257-264, Exh. 22).

On January 25, 2016, Petitioner, through counsel, filed a notice of appeal with the Ohio Supreme Court of Ohio. (R. 7-1, PageID# 265, Exh. 23). In his memorandum in support of jurisdiction, petitioner raised the same argument he raised before the state appellate court. (R. 7-1, PageID# 267-276, Exh. 24). The State filed a waiver of memorandum in response. (R. 7-1, PageID# 277, Exh. 25).

On April 20, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 7-1, PageID# 278, Exh. 26).

**D.    Federal Habeas Petition**

On August 19, 2016, Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **GROUND ONE**: Petitioner, [Mr. Bulls'] conviction for rape is unconstitutional as they [sic] are against the manifest weight of the evidence, and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.
>
> *Supporting Facts*: Petitioner submits that his rape conviction is based on

insufficient evidence and that the trial court erred by denying his Crim.R. 29 motion for acquittal. In Ohio, a review of the denial of a defendant's Crim.R. 29 motion for acquittal is by assessing the sufficiency of the State's evidence….

**GROUND TWO**: The trial court erred when it denied Petitioner's [Mr. Bulls'] motion for acquittal.

*Supporting Facts*: The Ninth District Court of Appeals consolidated this Error with Grounds for Relief No. I, failing to review the issue independently even though it was raised independently in the Petitioner's Appeals.

**GROUND THREE**: The trial court violated Petitioner's rights under the Sixth and Fourteenth Amendments of the United States Constitution, Article One, Section Ten of the Ohio Constitution and Section 2907.02(B) of the Ohio Revised Code when it sentenced Petitioner to a life sentence absent requisite findings by the jury as to the victim's age at the time of the offense and age of the Petitioner.

*Supporting Facts*: Petitioner argues that the trial court erred by sentencing him to 25 years to life in prison. In the case now presented to this Honorable Federal District Court of Appeals, Petitioner submits that his conviction was "strung" under the Sixth Amendment to the Unites States Constitution.

**GROUND FOUR**: This Court should reverse Petitioner's conviction and sentence and remand this case to the Ninth District for further considerations pursuant to *State v. Bevley*, 2015-Ohio-475.

*Supporting Facts*: Appellate Counsel for the Petitioner, upon filing to the Ohio Supreme Court, asking that the Supreme Court assume jurisdiction over the Appeal, requested the above stated issue be considered, rather than to simply dismiss the case completely, which was not an unreasonable request.

**GROUND FIVE**: The trial court erred when it granted the state's motion to dismiss Appellant's post[-]conviction petition, in violation of Section 2953.21 et.[sic] seq[.] of the Ohio Revised Code; article One, Section Sixteen of the Ohio Constitution; and the Fifth and Fourteenth Amendments to the United States Constitution. [sic]

*Supporting Facts*: Petitioner argues that the trial court erroneously denied his petition for post-conviction relief. His position on appeal is that the petition sufficiently asserted two bases for relief: ineffective assistance of counsel and possible *Brady* violations.

(R. 1, PageID# 5-10).

8

### III. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.   *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404

F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v.

Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision

involves an unreasonable application of clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

### A. Grounds One and Two: Sufficiency and Manifest Weight of the Evidence

In ground one, Petitioner asserts that his conviction was based on insufficient evidence, as well as arguing that it was against the manifest weight of the evidence. (R. 1, PageID# 5). In ground two, Petitioner asserts the trial court erred by denying his Ohio Crim. R. 29 motion for acquittal, and failed to address this argument independently on appeal. (R. 1, PageID# 6). The court shall address only Petitioner's sufficiency argument, because manifest weight claims are not cognizable on federal habeas review.[1] *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Gibson v. Miller*, No. 5:15CV119, 2016 WL 6277229 at *1 (N.D. Ohio Oct. 27,

---

[1] As explained in a decision from the United States District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio May 12, 2006) (*quoting State v. Martin*, 20 Ohio App. 3d 172, 20 Ohio B. 215, 485 N.E.2d 717 (Ohio Ct. App. 1983)).   A federal habeas court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," and, therefore, this Court cannot decide whether Petitioner's convictions were against the manifest weight of the evidence. *Id.*

2016) ("contentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims").

Turning to the sufficiency claim, the United States Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original).[2]  "In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses." *Wilson v. Tibbals*, No. 1:13CV00365, 2015 WL 1980714 at *5 (N.D. Ohio Apr. 30, 2015) (Pearson, J.) (*citing Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983)). Moreover, federal courts are required to give deference to the state court's factual determinations and "[a]ny conflicting inferences arising

_____

[2] The court declines to separately address Petitioner's argument concerning the denial of his Ohio Crim. R. 29 motion for acquittal, because it is redundant of his sufficiency claim. By its express terms, a court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Ohio Crim. R. 29(A). The Ohio Supreme Court has expressly invoked the *Virginia v. Jackson* standard as the criteria for granting a Rule 29 motion. *See, e.g., State v. Williams*, 74 Ohio St.3d 569, 1996-Ohio-91, 660 N.E.2d 724 (Ohio 1996) (when addressing a Crim.R. 29 motion for acquittal, "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, *following Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560)). By deciding the sufficiency issue, the state appellate court simultaneously addressed the failure to grant the motion to acquit.

from the record, including credibility conflicts, should be resolved in favor of the prosecution."

*Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) (*citing Walker*, 703 F.3d at 969-70).

Furthermore, the Supreme Court has emphasized that a state court's determination as to the sufficiency of the evidence is entitled to "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury--not the court--to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *accord Gipson v. Sheldon*, 2016 WL 4887471 at **14-15 (6th Cir. Sept. 14, 2016) ("AEDPA and *Jackson* together create two layers of judicial deference: First, we must defer to the jury's rational conclusions drawn from the evidence…. Second, we must defer to the state court's decision rejecting a sufficiency of the evidence claim.") (internal citations omitted).

The state appellate court found no merit to Petitioner's sufficiency claim, explaining as follows:

> {¶ 5} In his first and second assignments of error, Mr. Bulls argues that his rape conviction is based on insufficient evidence and that the trial court erred by denying his Crim.R. 29 motion for acquittal. Additionally, he argues that his conviction is against the manifest weight of the evidence. We disagree.

> {¶ 6} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010–Ohio–634, ¶ 33. The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review *de novo*. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge

12

to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶ 7} "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). Sexual conduct includes anal intercourse, and "[p]enetration, however slight, is sufficient to complete * * * anal intercourse." R.C. 2907.01(A). Whoever commits the foregoing offense is guilty of rape. R.C. 2907.02(B).

*** 

{¶ 14} Mr. Bulls argues that his rape conviction is based on insufficient evidence because the State failed to prove the element of sexual conduct. He argues that there was no evidence of any actual penetration because the prosecutor never asked T.H. to elaborate when she said that the body part affected by Mr. Bulls' actions was her butt. According to Mr. Bulls, "[i]t is possible that the penis only made contact with the buttocks * * * and did not actually penetrate * * *."

{¶ 15} As previously noted, "[p]enetration, however slight, is sufficient to complete * * * anal intercourse." R.C. 2907.01(A). T.H. did not testify that Mr. Bulls placed his penis on her buttocks. Rather, her testimony was that he placed his penis in her. When asked where inside her Mr. Bulls placed his penis, T.H. stated: "Like my butt." She specified that a butt is the part of the body that you "[d]o out of." Moreover, T.H. told Ms. Shrout that she experienced pain in her butt and stomach the day after Mr. Bulls assaulted her. Had Mr. Bulls placed his penis on T.H.'s buttocks, his doing so would not have caused her any physical pain. A rational trier of fact could have found that the reason T.H. experienced pain was that Mr. Bulls had actually penetrated her anally.

{¶ 16} T.H. also tested positive for chlamydia, which requires a sex organ to come into contact with a person's mouth, sex organ, or anus. There was testimony

that untreated chlamydia can survive in a person's body for up to two years, and, other than the incident that occurred between her and Mr. Bulls, T.H. denied being sexually active. Viewing the evidence in a light most favorable to the State, we must conclude that the State set forth sufficient evidence from which a rational trier of fact could have concluded that Mr. Bulls engaged in anal intercourse with T.H. Because anal intercourse is a form of sexual conduct, *id*., Mr. Bulls' argument that the State failed to prove the element of sexual conduct lacks merit. We next consider whether Mr. Bulls' conviction is against the weight of the evidence.

*State v. Bulls*, 2015-Ohio-276 ¶¶ 5-7, 14-27.[3]

Petitioner argues that there was insufficient evidence of the required "sexual conduct" in order to sustain a rape conviction. (R. 1-1, PageID# 14-15). He suggests that there was no evidence that he did anything more than make contact with the victim's buttocks, which would be "sexual contact," but that there was no evidence of penetration of the anus. *Id*. Under Ohio law:

> (A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

O.R.C. § 2907.01.

In this case, as recounted by the state appellate court, the victim, T.H., testified that she lived with her mother, siblings and the Petitioner, her step-father, at the time of the rape. *State v. Bulls*, 2015-Ohio-276 ¶¶2, 8; (R. 8-3, PageID# 610-613, Tr. 312-315). She testified that in October of 2011, Petitioner asked her to help him in the garage. (R. 8-3, PageID# 618-619, Tr. 320-321). After entering the garage, the victim testified to the following:

---

[3] Omitted paragraphs of the decision were already set forth above in the "Summary of Facts" section.

Q.      You went through the door -- I mean, do you remember, if you know, who went through first?

A.      Me.

Q.      And then what happened?

A.      That's when he closed the door and turned off the light.

Q.      All right. And after he closed the door, tell us what happened.

A.      Uhm, he turned out the lights, then he told me to get on the couch, but I didn't, so he pushed me down, had his arms -- had his hands on the back of my arms.

Q.      Okay. And when he pushed you down on the couch and had his hands on the back of your arms, what did you do?

A.      I tried to get up, but I couldn't.

Q.      Why couldn't you?

A.      Because his hands was on my arm.

Q.      So then what happened?

A.      That's when he had one hand left on my arm, then he pulled down my shorts.

                                   ***

Q.      So now you said that he pulled them down. Did he pull the shorts down, the shorts and underwear?

A.      Yes.

Q.      Yes –

A.      Both.

Q.      After he pulled down your shorts and underwear, what happened next?

A.      That's when he pulled down his pants.

                                   ***

Q.      After he pulls down his pants, what happens next?

15

A.     That's when he put it in me.

Q.     Okay. And we probably understand when you say "put it in me," but for the record, and for this jury, we want to be clear what it is you're talking about.

A .     Put his --

Q.     You got to let me ask the question, and then you have to answer; otherwise, Tracy will not be able to take it down, okay? When you say "it," what do you mean by it?

A.     His private part.

Q.     His private part. You said he put it, his private part, in you?

A.     Yes.

Q.     When you say "in you," what part do you mean when you say "in you"?

A.     Like my butt.

Q.     I think I've asked you this previously. When you say butt, what do you do with your butt?

A.     Do out of it.

(R. 8-3, PageID# 619-623, Tr. 321-325).

The jury plainly credited the testimony of the victim, which was sufficient to substantiate the requisite element of sexual conduct. Petitioner's general complaint that the victim should not have been deemed credible and was prone to lying is beyond this Court's review, as it may not weigh the credibility of witnesses. Furthermore, Petitioner's contention that forensic evidence was inconclusive or lacking is immaterial, as eyewitness testimony, on its own, is sufficient to convict. *See, e.g., Tucker v. Palmer*, 541 F.3d 652, 658-659 (6th Cir. 2008) ("[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction.") (*citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty.")); *see*

*also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *Williams v. Bauman*, 2015 U.S. App. LEXIS 23149 (6th Cir. Jan. 30, 2015) (finding the victim's testimony was sufficient to sustain defendant's convictions); *cf. Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) ("Circumstantial evidence alone is sufficient to support a conviction, and [i]t is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.") (internal citations and quotation marks omitted).

Based on the victim's clear testimony that Petitioner forcefully penetrated her anally and applying the "double deference" required under the AEDPA, this court cannot find that the state appellate court's decision was objectively unreasonable. Accordingly, Petitioner's sufficiency of the evidence claim is without merit.[4]

**B.  Ground Three: Ages of the Victim and the Petitioner**

In his third ground for relief, Petitioner asserts that the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution when it sentenced him to life in prison without the requisite findings by the jury as to the age of the victim at the time of

---

[4] The court declines to address Petitioner's argument regarding the presence of chlamydia in the victim, a disease with which Petitioner was also diagnosed, or his argument that his failure to deny sexual conduct with the victim during recorded phone conversations was unjustified. Because the victim's testimony alone was sufficient to sustain the rape conviction, these other issues are moot. While the presence of chlamydia in both the victim and Petitioner may have buttressed the State's evidence against Petitioner, it was unnecessary to support a conviction. The same is true of any inference that the jury may have drawn from recorded telephone calls between the victim and Petitioner.

the offense. (R. 1, PageID# 7). Respondent asserts that Petitioner's third ground for relief, because it involves an alleged sentencing error, fails to present a cognizable federal habeas claim. (R. 7, PageID# 90-91).

Petitioner concedes that "the issue of the victim's age was submitted to the jury as to her being under the age of thirteen, the jury did not make a determination as to her age at the time of the offense." (R. 1-1, PageID# 21). Petitioner's concession and argument are inherently contradictory. The state appellate court addressed this argument, or a similar argument,[5] as follows:

> {¶ 27} Mr. Bulls argues that the only way the trial court could sentence him to 25 years to life in prison was if the trier of fact made certain additional findings under R.C. 2907.02(B), including that he was under 16 years of age at the time of his offense. "If a defendant is found guilty of violating Section 2907 .02(A)(1)(b), [however,] twenty-five years to life is the minimum prison sentence that he can receive, unless he was under the age of 16 at the time of the offense." (Emphasis added.) *State v. Randles*, 9th Dist. Summit No. 26629, 2013–Ohio–4681, ¶ 9. R.C. 2907.02(B) provides that, "[e]xcept as otherwise provided in this division, * * * an offender under division (A)(1)(b) of this section shall be sentenced to a prison term or term of life imprisonment pursuant to [R.C.] 2971.03 * * *." Because none of the other sentencing options set forth in R.C. 2907.02(B) applied to Mr. Bulls, the court was obligated to sentence him in accordance with R.C. 2971.03. That statute requires a trial court to impose "a minimum term of twenty-five years and a maximum of life imprisonment" upon an offender who 1) commits a violation of R.C. 2907.02(A)(1)(b), and 2) does so by purposely compelling his or her victim to submit by force or threat of force. R.C. 2971.03(B)(1)(c). The jury found that Mr. Bulls violated R.C. 2907.02(A)(1)(b)

---

[5] Before the state appellate court, Petitioner's main argument was that the trial court made no findings concerning his age, suggesting that in order to sentence him to life in prison, "the trial court had to make a finding that Appellant was less than sixteen years at the time of the offense; that he did not cause serious physical harm to the victim; that the victim was ten years or older at the time of the offense; and that the Appellant had not been previously convicted of an offense of Rape." (R. 7-1, PageID# 125, Exh. 8). In the petition, however, Petitioner's argument is focused solely on the victim's age, and it is questionable whether this argument has been fairly presented to the state courts. (R. 1-1, PageID# 21). The state appellate brief, however, does make the undeveloped allegation that "the jury did not make a determination as to [T.H.'s] age at the time of the offense." (R. 7-1, PageID# 126, Exh. 8). Nevertheless, as explained in the body of this report and recommendation, such an argument is without merit.

and, in doing so, compelled T.H. to submit by force or the threat of force. Consequently, the trial court did not err by sentencing Mr. Bulls to 25 years to life in prison. *See id*. Mr. Bulls' third assignment of error is overruled.

*State v. Bulls*, 2015-Ohio-276, ¶27.

Petitioner's argument before the state appellate court was based on the Supreme Court's holding in *Apprendi v. New Jersey*, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000).

Here, Petitioner was charged with violating O.R.C. § 2907.02(A)(1)(b) in Count Two, and convicted of said charge. (R. 7-1, PageID# 101, 104 Exhs. 3 & 6). The statute reads as follows:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

O.R.C. § 2907.02(A)(1)(b). The remainder of the statute, explains that "[e]xcept as otherwise provided in this division … an offender under division (A)(1)(b) of this section shall be sentenced to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code." O.R.C. § 2907.02(B). Because none of the enumerated exceptions of section 2907.02(B) are applicable, neither the jury nor the trial court was required to make any additional findings before the court sentenced Petitioner to life imprisonment with parole eligibility after 25 years. Therefore, *Apprendi* is inapplicable, because it does not appear that

19

Petitioner was sentenced beyond the statutory maximum. Assuming *arguendo* that petitioner was sentenced beyond the statutory maximum and *Apprendi* applies*, the Apprendi* requirements were plainly satisfied. First, the issue of the victim's age was indeed submitted to the jury. With respect to Count Two of which Petitioner was convicted, the trial court included the following jury instruction:

> Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 1st day of October, 2011, through the 31st day of October, 2011, and in Summit County, Ohio, the defendant purposely engaged in sexual conduct with [T.H.], who was not the spouse of the defendant, when [T.H.] was less than 13 years of age, and her date of birth is November [—], 1999, whether or not the defendant knew her age, and that the defendant purposely compelled [T.H.] to submit by force or threat of force.

(R. 8-6, PageID# 1033, Tr. 723).

Second, the victim's age was proved beyond a reasonable doubt to the jury's satisfaction, a finding supported by the victim's testimony. With respect to her age, the victim testified that she was born in November of 1999. (R. 8-3, PageID# 607, Tr. 309). She also testified that the events resulting in the rape charge occurred in October of 2011. (R. 8-3, PageID# 616, Tr. 318). As such, there was ample testimony from the victim capable of establishing that she was under thirteen years of age at the time of the offense.[6] By returning a guilty verdict, the jury clearly expressed its finding that it found the victim was less than thirteen years of age when the offense occurred.

Therefore, the court finds ground three is without merit as the state court's interpretation of state law, including the requisite elements of the offense, is not subject to habeas review. Furthermore, to the extent this ground for relief states a cognizable federal habeas claim, the

---

[6] The victim would have been just under twelve years old in October of 2011.

state court's failure to find an *Apprendi* violation was neither contrary to nor an unreasonable application of clearly established federal law.

**C. Ground Four: Failure to Reverse Conviction Based on *State v. Bevly***

In his fourth ground for relief, Petitioner asserts that the Supreme Court of Ohio should have reversed the trial court's sentence in light of the same court's previous decision in *State v. Bevly*, 2015-Ohio-475, 142 Ohio St. 3d 41, 27 N.E.3d 516, 517 (Ohio 2015). (R. 1-1, PageID# 23). Respondent contends this ground for relief is based solely on an alleged error of state law and, therefore, is not cognizable. (R. 7, PageID# 89-92). The court agrees.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); *accord Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984); *Coleman v. Curtin*, 425 Fed. App'x 483, 484 (6th Cir. 2011) ("an error in the application of state law will be reviewed 'only if it were so fundamentally unfair as to violate the petitioner's due process rights.') (citations omitted).

In *Bevly*, the Supreme Court of Ohio held that: (1) Ohio's gross sexual imposition statute ("GSI"), O.R.C. § 2907.05(C)(2)(a), violated the due-process protections of the Fifth and Fourteenth Amendments to the United States Constitution because there was no rational basis for the provision that required a mandatory prison term where the state produced corroborating evidence of the crime; and (2) in cases where a defendant pled guilty to GSI, imposing a mandatory prison term based on corroborating evidence of the charge violated the defendant's right to a jury trial. 2015-Ohio-475 at the syllabus.

As Petitioner's conviction stemmed from a jury trial, the second holding of *Bevly* is inapplicable. Furthermore, the first holding of *Bevly* is also inapplicable because it involves a

different and distinct offense—GSI, than the offense of which Petitioner was convicted—rape of a child under 13 years of age. Also, the rape offense of which Petitioner was convicted, O.R.C. § 2907.02, does not contain a similar provision concerning corroborating evidence resulting in mandatory sentences. Therefore, Petitioner has not identified an error in the application of state law. Moreover, even if some state law error were identified, Petitioner has failed to demonstrate how an erroneous application of state law was so fundamentally unfair as to deprive him of due process.

Therefore, the court finds ground four fails to set forth a cognizable claim.

**D.  Ground Five: Denial of Post-Conviction Petition**

In his final ground for relief, Petitioner asserts that the state courts violated his federal constitutional rights by denying his petition for post-conviction relief without a hearing. (R. 1-1, PageID# 24-26). Respondent asserts that alleged errors in state court collateral proceedings do not present cognizable claims upon habeas review. (R. 7, PageID# 92-94).

"The Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). "We have clearly held that claims challenging state collateral post-conviction proceedings cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254, because the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Cress v. Palmer*, 484 F.3d at 853 (internal quotation marks omitted); *accord Johnson v. Lazaroff*, No. 1:15CV43, 2016 WL 791609 at *15 (N.D. Ohio Jan. 6, 2016) ("It is settled law in the Sixth Circuit that alleged errors in post-conviction proceedings, such as the failure to grant

evidentiary hearings, are outside the scope of federal habeas review.") (Burke, M.J.), *report and recommendation adopted*, 2016 WL 778047 (N.D. Ohio Feb. 29, 2016); *Foster v. Bergh*, No. 2:08-CV-14269, 2010 WL 4940006, at \*23 (E.D. Mich. July 19, 2010). "To the extent petitioner's claims assert the state court's denials of an evidentiary hearing as a substantive basis for habeas relief, the claims are not cognizable on habeas review. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Foster*, 2010 WL 4940006, at \*23 (internal quotation marks omitted), *report and recommendation adopted*, 2010 WL 4940038 (E.D. Mich. Nov. 30, 2010); *cf. Nicholson v. Larose*, No. 1:13cv2535, 2015 WL 1757898 at \*15 (N.D. Ohio Apr. 17, 2015) ("Nor does a criminal defendant have a constitutional right to an evidentiary hearing on a motion to withdraw a guilty plea.") (citations omitted).

In addition, even if such a claim were cognizable, Petitioner has failed to establish that he was entitled to a hearing under Ohio law:

> [U]nder Ohio law, courts are not required to hold evidentiary hearings in all post-conviction cases. *See Sherrills v. Cuyahoga County Court of Common Pleas*, 72 Ohio St.3d 461, 650 N.E.2d 899, 900 (Ohio 1995). Where a petition alleges facts which, if proved, would entitle the petitioner to relief, but the files and records of the case negate the existence of facts sufficient to entitle the petitioner to relief, the trial court may so find and summarily dismiss the petition; in so doing, however, the court should specify the portions of the files and records that negate the existence of the petitioner's alleged facts. *See State v. Perry*, 226 N.E.2d 104, 105 (Ohio 1967) (syllabus para. 3). To merit an evidentiary hearing, a petitioner must submit evidentiary documents containing sufficient cogent and operative facts that demonstrate substantive grounds for relief. *See State v. Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205, 210 (Ohio Ct. App. 1994); *State v. Smith*, 30 Ohio App.3d 138, 506 N.E.2d 1205, 1208 (Ohio Ct. App. 1986). And it is true that, according to caselaw, Ohio post-conviction courts are not statutorily required to compel discovery so that a petitioner may gather evidence to prove that a hearing is warranted. *See Smith*, 506 N.E.2d at 1208.

*Byrd v. Collins*, 209 F.3d 486, 512 (6th Cir. 2000)

The court agrees that Petitioner's fifth ground for relief fails to present a cognizable claim and recommends it be denied.

### IV. Conclusion

For the foregoing reasons, it is recommended that Bulls's Petition be DENIED.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: April 24, 2018.

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

24